### FRANK CONTRERAS V. THE STATE.

No. 19955. Delivered November 9, 1938.
Rehearing Denied January 25, 1939.

The opinion states the case.

*Ditzler H. Jones,* of Uvalde, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for assault with a prohibited weapon; penalty assessed at confinement in the penitentiary for one year.

The record presented for review is void of a statement of facts which can be considered by this court. It appears that the appellant gave notice of appeal on March 22, 1938. The statement of facts accompanying the transcript was filed in the trial court on June 9, 1938. However, the statement was not approved by the trial judge until September 19, 1938, which was 181 days after notice of appeal was given.

In the brief of counsel are set out certain recitals tending to justify the delay in securing the approval of the statement of facts by the trial judge. However, the recitals are not supported by affidavit and therefore cannot be appraised by this court without doing violence to the statute, Art. 760, C. C. P., and established precedents. The law is well settled that the appellant must use diligence in obtaining and filing within the prescribed time a statement of facts which has been approved by the trial judge; and this court has no authority to disregard the statutory provisions because of the ignorance, race or sex of the accused.

In the absence of the statement of facts and bills of exception, nothing has been presented for review which would authorize a reversal of the conviction.

The judgment is therefore affirmed.

ON APPELLANT'S MOTION FOR REHEARING

CHRISTIAN, JUDGE.—Upon the showing made and supported by affidavits, we have decided to consider the statement of facts.

It appears from the testimony of George Brittan that on the 10th day of February, 1938, appellant entered witness' home at night and pointed a pistol at him and his wife. We quote from the testimony of the witness, as follows:

"My wife and little boy and myself all slept in one room that night in the same bed; the little boy slept on my side of the bed at the foot of the bed; my wife and I were sleeping together with the little boy. We went to bed right away after we got home, and the only thing that disturbed me was the time Frankie Contreras come in; I was disturbed by that. I was sleeping when I heard something that attracted my attention. It was when Frank Contreras come in, this defendant sitting here, this same fellow. He came in through the kitchen door; I know that because that was the only way he had to come in; there were three rooms in the house; the kitchen is on the back of the house, then there is another room with furniture and it was locked, and then there was the room we were sleeping in and that was open; one room was locked up; no, that was not my furniture that was in that room; we just had the kitchen and the bedroom, and he came in the back way; he came into the kitchen and then he come into the bedroom and pushed the door open; I know he pushed the door open because he slam the door and there was a trunk, I guess a little ways, over two feet, where he slam the door and when he did that it hit that trunk and that was what woke both me and my wife, and he didn't say anything right away but kept on coming and my wife say, who are you and he would not answer, then my wife called to him, again, and say, who are you, then he called his name Frankie Contreras, and my wife said, who, and he said, Frankie Contreras; up until that time I did not know who it was and then my wife said, what you want, and I keep still, then he said, what is the name of the man that is sleeping with you; Frankie Contreras said that to her, and I just lay still; I didn't say not a word; then he said, what is the name of the man that is

sleeping with you; and my wife she didn't give the name to him; she didn't say nothing; and then he kinder keep still and my wife she jump from my side over on the far side of where my boy was and called for the boy, she said, Jose, Jose, wake up; and when she call the boy two times then he skip out; he got close to the bed by the rail of the bed, he could get no closer than the rail of the bed, and he had a six shooter in his hand, and he was facing us and point that at us; directly at us, all the three of us in the bed; when my wife jump over to the boy I just stayed on the bed, I wouldn't move and he skip out; then after he skip out we got up and dressed and went out the house the back way he come in and we hit for the brush and keep right in the back of it and we went toward Cardenas' place, and that was at two o'clock in the morning. I reported it to the officers at nine o'clock the next morning as soon as they opened up the court house; and this is the fellow that did that, and it happened here in Kinney County, State of Texas."

The testimony of the wife of the injured party was substantially the same as that above quoted.

We quote from the testimony given by appellant on direct-examination, as follows:

"I have not been convicted of a felony in this State or any other State in this Union, and I have been in four states of this Union and never been convicted. I admit that I was on the 14th day of February, that I was in town, and I went to this man house, but it was not the exact time they say it was; it was about twelve or fifteen minutes or twenty minutes past twelve; I didn't know they were living; I didn't know nobody was at the house; I went to Celestino's house, and that apartment what they talking about it is on the same yard with Celestino; same lot; it divided by the little net wire fence. When I left Celestino house I turn back around and Celestino told me to go to bed, and I told him no; I didn't understand what he said to go to bed in the house where he was or either in the other house; I turn around and went to this fellow house that he claims that he had it rented; I didn't know him before this; I didn't know his wife before this; that night I don't know why they got I had a gun; I admit I went to their house; I don't know whether they call it their own home or not, but I went to that house, and—but I didn't had no gun; I also give my name two times to the lady that I was the man, because I can go there any time I feel like going to sleep, that is my aunt's house; thats all I got to say."

We think the testimony is sufficient to sustain the judgment of conviction.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.